Revised 11/15

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| vs. | ) | **PRESENTENCE INVESTIGATION REPORT** |
| | ) | |
| | ) | **Docket No.   0976 1:17CR00080-002** |
| **HARMONY LORRAINE HOPPER** | ) | |
| | ) | |

**Prepared for:**    The Honorable Edward J. Lodge
Senior United States District Judge

**Prepared by:**    Nate  Hudson
United States Probation Officer
Boise, ID 83724-0101
(208) 334-1141
nate_hudson@idp.uscourts.gov

**Assistant U.S. Attorney**
Christian S. Nafzger
WGI Plaza, Plaza IV
800 East Park Blvd., Suite 600
Boise, ID 83712-9903
(208) 334-1211
christian.nafzger@usdoj.gov

**Defense Counsel**
Craig Durham
223 North 6th Street
Suite 325
Boise, ID 83702
(208) 345-5183
chd@fergusondurham.com

**Sentence Date:**    February 6, 2018, 10:00 AM, Boise, Idaho

**Offense:**    <u>Count 1</u>:
Possession with Intent to Distribute Methamphetamine
21 § 841(a)(1) and (b)(1)(C)
20 years imprisonment/ $1,000,000 fine
Class C Felony

**Release Status:**    Released: Pretrial Supervision (June 6, 2017)

**Detainers:**    None

**Codefendants:**    Javier Valle Tapia        0976 1:17CR00080-001

**Related Cases:**    None

**Date Report Prepared:** December 21, 2017        **Date Report Revised:**

**Identifying Data:**

| | |
|---|---|
| **Date of Birth:** | March 22, 1994 |
| **Age:** | 23 |
| **Race:** | White, Non-Hispanic origin |
| **Sex:** | Female |
| | |
| **SSN No:** | 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 |
| **FBI No:** | 87129RD9 |
| **USM No:** | 18994-023 |
| **OLN No:** | ID – OJ458485F4 |
| **Other ID No:** | ID10146973 |
| **PACTS No:** | 3587933 |
| | |
| **Education:** | GED (verified) |
| **Dependents:** | None |
| **Citizenship:** | U.S. Citizen |
| **Country of Birth:** | United States |
| **Place of Birth:** | Boise, Idaho |
| | |
| **Legal Address:** | 538 N. Katsura Ave<br>Kuna, Idaho 83634 |
| | |
| **E-Mail Address:** | playboyybia1994@gmail.com |
| | |
| **Alias(es):** | None |



*Restrictions on Use and Redisclosure of Presentence Investigation Report.* Disclosure of this presentence investigation report to the Federal Bureau of Prisons and redisclosure by the Bureau of Prisons is authorized by the United States District Court solely to assist administering the offender's prison sentence (i.e., classification, designation, programming, sentence calculation, pre-release planning, escape apprehension, prison disturbance response, sentence commutation, or pardon) and other limited purposes, including deportation proceedings and federal investigations directly related to terrorist activities. If this presentence investigation report is redisclosed by the Federal Bureau of Prisons upon completion of its sentence administration function, the report must be returned to the Federal Bureau of Prisons or destroyed. It is the policy of the federal judiciary and the Department of Justice that further redisclosure of the presentence investigation report is prohibited without the consent of the sentencing judge.

**PART A. THE OFFENSE**

<u>Charge(s) and Conviction(s)</u>

1. On May 9, 2017, a six count Superseding Indictment was filed in the United States District Court in the District of Idaho. Count One charged that on February 8, 2017, Javier Tapia and **Harmony Loraine Hopper** knowingly distributed a mixture containing methamphetamine, violations of 21 § 841(a)(1) and 18 § 2. Counts Two and Three charged that on February 14, 2017, and February 21, 2017, Javier Tapia distributed a mixture containing methamphetamine, violations of 21 § 841(a)(1). Count Four charged that on March 13, 2017, Javier Tapier knowingly distributed 50 grams or more of a mixture containing methamphetamine, in violation of 21 § 841(a)(1). Count Five charged that on March 22, 2017, Javier Tapia and **Harmony Loraine Hopper** knowingly distributed 50 grams or more of a mixture containing methamphetamine, violations of 21 § 841(a)(1) and 18 § 2.

2. Count Six charged that on April 12, 2017, Javier Tapia, having previously being convicted of a misdemeanor crime of domestic violence, domestic battery in the presence of a child, a violation of Idaho § 18-918(4), on December 6, 2016, in docket number MD-2016-6628, in Ada County, Idaho, knowingly possessed a Smith and Wesson, Model SW9VE, nine millimeter pistol, which had been shipped and transported in interstate and foreign commerce, in violation of 18 § 922(g)(9).

3. A criminal drug forfeiture charged that upon conviction of one or more of the above offenses, Javier Tapia and **Harmony Loraine Hopper** shall forfeit to the United States any and all proceeds derived from the ongoing offenses. 21 § 853. A firearm forfeiture which charged that upon conviction of Count Six, Javier Tapia shall forfeit to the United States the firearms and ammunition used in the offense. 18 § 924(d) and 28 § 2461(c).

4. On October 30, 2017, a one count Superseding Information was filed in the United States District Court in the District of Idaho. Count One charged that on April 11, 2017, **Harmony Loraine Hopper** knowingly possessed with intent to distribute a mixture containing methamphetamine, a violation of 21 § 841(a)(1).

5. On November 6, 2017, the defendant entered a plea of guilty to Count One of the Superseding Information. The terms of the written plea agreement include the following: (1) the government agreed to the dismissal of the Superseding Indictment; (2) the government agreed to recommend a sentence within the applicable guideline range; (3) the parties agreed that the defendant should be entitled to a reduction in the offense level for acceptance of responsibility; (4) the parties agreed the defendant should be responsible for 28 grams of a mixture containing methamphetamine, resulting in a base offense level of 18; and (5) the government will request that the defendant receive a downward departure under § 5K1.1, Substantial Assistance (18 U.S.C. § 3553(e)), if the defendant substantially assists in the investigation of others.

Pretrial Adjustment Summary

6. The defendant was released from custody on standard conditions of release including pretrial supervision on June 6, 2017. The defendant has complied with all conditions of release. Since being placed on pretrial release, the defendant has secured her own residence in Kuna, Idaho, obtained and maintained full-time employment, and has maintained regular contact with her officer. Additionally, she actively participated in intensive outpatient treatment programming and has had no positive drug tests. As a result of her success on supervision and in treatment, the Court approved a modification on October 11, 2017, and removed conditions of home confinement and electronic monitoring.

Status of Codefendant

7. Javier Tapia entered a plea of guilty to Counts Four and Six of the Indictment on October 10, 2017. Sentencing is scheduled for January 9, 2018.

The Offense Conduct

8. The following information was derived from investigative materials provided by the Assistant United States Attorney. The investigative reports were provided by the Boise, Idaho, Police Department, the Drug Enforcement Administration (DEA), and the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF).

9. On February 8, 2017, law enforcement arranged for the controlled purchase of methamphetamine by a confidential informant from Javier Tapia. The confidential informant initially agreed to purchase one ounce of methamphetamine from Javier Tapia for $600, but Javier Tapia later called the confidential informant and stated he had already sold some methamphetamine and only had one-half ounce remaining. They agreed to a price of $300. The confidential informant and a undercover investigator met Javier Tapia at a convenience store parking lot in Garden City, Idaho. Law enforcement observed Javier Tapia drive into the parking lot, exit his vehicle, and he walked over to another vehicle with a female driver. The undercover investigator later got into Javier Tapia's vehicle and purchased 14.7 grams of a mixture containing methamphetamine. Javier Tapia told the undercover investigator he would text his contact information to the undercover investigator for future transactions.

10. On February 9, 2017, Javier Tapia called the confidential informant and asked if the undercover investigator "needed anything." The confidential informant called the undercover investigator and was instructed to give Javier Tapia the undercover investigator's phone number.

11. On February 13, 2017, the undercover investigator arranged to purchase one ounce of methamphetamine for $600. On February 14, 2017, the undercover investigator met Javier Tapia at the same location, and the undercover investigator observed the same female present at the previous transaction was a passenger in Javier Tapia's vehicle. She was later identified as **Harmony Hopper**. Javier Tapia

        entered the undercover investigator's vehicle and sold 23.51 grams of actual methamphetamine for $580.

12. On February 19, 2017, the undercover investigator called Javier Tapia and they arranged for a two ounce methamphetamine transaction for $1,200 to occur on February 21, 2017. They met on that date at a Home Depot parking lot, and Javier Tapia provided the undercover investigator a total of 52.46 grams of actual methamphetamine in exchange for $1,200.

13. On February 26, 2017, the undercover investigator texted Javier Tapia and asked how much methamphetamine he would need to purchase in order to get a discount. Javier Tapia responded that he would charge $500 per ounce if the undercover investigator ordered four or more ounces. The undercover investigator stated he wanted four ounces and Javier Tapia instructed the undercover investigator to contact him once he has the money. On March 11, 2017, Javier Tapia informed the undercover investigator that the price had gone up from $500 to $550 per ounce.

14. On March 13, 2017, the undercover investigator met Javier Tapia at a convenience store parking lot in Garden City. Javier Tapia entered the undercover investigator's vehicle and instructed the undercover investigator where to drive. Javier Tapia appeared very nervous and was looking all around as they drove. Javier Tapia then asked the undercover investigator if he was wearing a microphone, to which the undercover investigator stated no. The undercover investigator asked Javier Tapia if he was still "tripping" on the undercover investigator, and Javier Tapia responded "a little." After parking, Javier Tapia provided the undercover investigator a total of 107.44 grams of actual methamphetamine in exchange for $2,200. After the transaction, the undercover investigator asked about lowering the price, and Javier Tapia stated he would not make any money if he lowered the price.

15. Between March 16 and March 21, 2017, the undercover investigator and Javier Tapia communicated several times via text messaging. Javier Tapia repeatedly suggested that he needed to observe the undercover investigator ingest methamphetamine to prove he was not an undercover investigator. Javier Tapia stated that he was looking out for his "own skin" as he has a family. The undercover investigator told Javier Tapia that if he was not comfortable the undercover investigator would go elsewhere. Javier Tapia then mistakenly sent a text to the undercover investigator stating, "Greg Evans look him up if you can."

16. On March 22, 2017, Javier Tapia agreed to sell the undercover investigator six ounces of methamphetamine for $3,300. Javier Tapia directed the undercover investigator to meet him at the original convenience store parking lot. He then changed the meeting spot to a pizza restaurant and later to a parking lot behind a salon. The defendant entered the undercover investigator's vehicle and provided a total of 195.21 grams of actual methamphetamine to the undercover investigator in exchange for $4,340.

17. On April 12, 2017, law enforcement attempted to serve an arrest warrant on Javier Tapia. They observed Javier Tapia driving his vehicle in Boise. After parking his vehicle illegally, law enforcement attempted to contain his vehicle and arrest Javier Tapia. **Harmony Hopper** was identified as the passenger in the vehicle. One agent pulled in front of Javier Tapia's vehicle and another officer parked behind with the emergency lights on. The agent exited his vehicle wearing a ballistic vest that displayed "POLICE" on the front and back. He was on the passenger side of the Javier Tapia's vehicle, and he gave loud verbal commands to open the door and exit the vehicle while pointing his firearm at Javier Tapia. Javier Tapia then reached down, put the car in drive, and smashed into the agent's vehicle, nearly pinning the agent between the two vehicles. Javier Tapia then rammed another police officer's vehicle not far away and escaped. Because Javier Tapia had already assaulted two officers, there was no pursuit because of the risk he posed to the public.

18. Javier Tapia's vehicle was later found abandoned in Boise. Officers located a Smith and Wesson nine millimeter pistol and Javier Tapia's cell phone in the middle console in the vehicle. A loaded magazine was also recovered in the vehicle separate from the pistol. Records indicated Javier Tapia was previously convicted of a misdemeanor crime of domestic violence in Ada County, Idaho, Magistrate Court under docket number CR-MD-2016-6628. An ATF agent examined the Smith and Wesson firearm and determined it was manufactured in the state of Massachusetts. The agent concluded the firearm had therefore traveled in or affected interstate and/or foreign commerce. There was no indication the firearm was stolen or unlawfully modified.

19. After escaping from law enforcement, Javier Tapia and **Harmony Hopper** stayed the night in a hotel room, and they then stayed two nights with a friend of **Harmony Hopper**. The friend indicated she was going to McCall, Idaho, and asked Javier Tapia if he wanted her to sell any methamphetamine while she was in McCall. **Harmony Hopper** received an ounce of methamphetamine from Javier Tapia, and she delivered it to her friend to sell so they could raise money while hiding from law enforcement.

20. On April 21, 2017, law enforcement responded to a location where they believed Javier Tapia was located. Numerous agencies met at the residence and directed Javier Tapia and **Harmony Hopper** to exit their residence with their hands in the air. A few minutes later, Javier Tapia and **Harmony Hopper** walked out of the front door with their hands in the air, and they were both arrested without incident.

21. Officers asked **Harmony Hopper** if there was anybody else in the residence and she stated no. **Harmony Hopper** then granted law enforcement permission to look inside the trailer. **Harmony Hopper** told law enforcement that she and Javier Tapia had "smoked a couple of bowls" of methamphetamine just prior to law enforcement arriving. She also stated Javier Tapia flushed something down the toilet before they exited the residence. Law enforcement recovered drug pipes and a small amount of marijuana from the bedroom.

6

22. Javier Tapia agreed to be interviewed, and he immediately apologized to the agent for nearly running him over. He stated he was "high" and had little memory of the incident. Javier Tapia admitted selling an ounce of methamphetamine to "Jack" approximately every other day for $550. He admitted to selling an "eight-ball" of methamphetamine for $120 to "Jaime" on April 9, 2017, and two ounces of methamphetamine to "Charity" on April 10, 2017, for $1,000.

23. Javier Tapia discussed his source of methamphetamine, but he was adamant that it not be in his discovery. He stated that after he started selling methamphetamine, he went "straight to the top," meaning he was moving a lot of methamphetamine and profiting from such. Javier Tapia stated he purchased the firearm recovered from his vehicle on April 12, 2017, from an unnamed friend for $300. He stated he purchased the firearm for personal protection. Regarding the incident on April 12, 2017, he stated **Harmony Hopper** started yelling "go, go, go," and he put the car in drive and rammed the agent's vehicle.

24. **Harmony Hopper** was interviewed, and she admitted to using methamphetamine for the previous four years. When asked why she did not exit her vehicle as directed on April 12, 2017, she stated she was scared and admitted to saying "go, go, go" to Javier Tapia because she did not want to get in trouble. She stated after this incident, they stayed one night in a motel in Garden City, Idaho, and they later stayed with her father in Oregon. She further admitted to hiding and holding methamphetamine for Javier Tapia, and she used "we" and "us" when describing various incidents.

Victim Impact

25. This is a Title 21 offense and there is no identifiable victim.

Adjustment for Obstruction of Justice

26. The probation officer has no information indicating the defendant impeded or obstructed justice.

Adjustment for Acceptance of Responsibility

27. The defendant entered a plea of guilty as noted above. Thereafter, in the presence of counsel, the defendant was interviewed by the probation officer on November 30, 2017, at the United States Probation Office in Boise, Idaho. At that time, the defendant stated the "Factual Basis" of the plea agreement is true and accurate.

28. Based upon the concepts of § 3E1.1, the defendant is viewed as having accepted responsibility for the conduct comprising the conviction.

Offense Level Computation

29. Although the offense occurred on April 12, 2017, the guidelines effective November 1, 2016, were used. Section 1B1.11.

**Count 1**: **Possession with Intent to Distribute Methamphetamine**

30. **Base Offense Level:** Pursuant to the plea agreement, and acting in an abundance of caution, the defendant is held accountable for 28 grams of a mixture containing methamphetamine. The guideline for 21 § 841(a)(1) offenses is found in § 2D1.1 of the guidelines. That section provides that an offense involving at least 20 but less than 30 grams of a mixture containing methamphetamine has a base offense level of 18. Section 2D1.1(c)(11).   **18**

31. **Specific Offense Characteristics:** The offense level is increased by two levels because the co-defendant possessed a firearm during the course of relevant conduct, and this was reasonably foreseeable for the defendant in furtherance of jointly undertaken criminal activity.   **+2**

32. **Victim Related Adjustment:** None.   **0**

33. **Adjustment for Role in the Offense:** None.   **0**

34. **Adjustment for Obstruction of Justice:** The defendant induced the co-defendant to flee from law enforcement and therefore recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer. The offense level was increased by two levels. Section 3C1.2.   **+2**

35. **Adjusted Offense Level (Subtotal):** Twenty-two.   **22**

36. **Chapter Four Enhancement:** None.   **0**

37. **Acceptance of Responsibility:** The defendant clearly demonstrated acceptance of responsibility for the offense. Accordingly, the offense level was decreased by two levels. Section 3E1.1(a).   **-2**

38. **Acceptance of Responsibility:** The defendant assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the intention to enter a plea of guilty. Accordingly, the offense level was decreased by one additional level. Section 3E1.1(b).   **-1**

39. **Total Offense Level:** Nineteen.   **19**

**PART B. THE DEFENDANT'S CRIMINAL HISTORY**

Juvenile Adjudication(s)

| | Date of Referral | Charge/Court | Date Sentence Imposed/Disposition | Guideline | Pts |
|---|---|---|---|---|---|
| 40. | 05/11/2009 (Age 15) | Possession of Alcohol by a Minor/ District Court, Ada County, ID; Docket No: CR-2009-9607 | 11/23/2009: $75 fine | 4A1.2(c)(2) | 0 |

Court documents verify the above information.

| | | | | | |
|---|---|---|---|---|---|
| 41. | 04/08/2011 (Age 17) | Minor in Possession of Alcohol (Second Offense)/ Magistrate Court, Ada County, ID; Docket No: CR-2011-5768 | 06/01/2011: 30 days jail (30 days suspended), 1 year probation | 4A1.2(c)(2) | 0 |

Court documents verify the above information.

Adult Criminal Conviction(s)

| | Date of Arrest | Conviction/Court | Date Sentence Imposed/Disposition | Guideline | Pts |
|---|---|---|---|---|---|
| 42. | 07/03/2012 (Age 18) | Petit Theft/ District Court, Ada County, ID; Docket No: CR-2012-9860 | 08/24/2012: 90 days jail (85 days suspended), 1 year probation | 4A1.2(c)(1) | 0 |

Court documents verify the above information and that the defendant knowingly waived her right to legal counsel. The police report indicates the defendant entered a Kohl's store, put on clothing in the dressing area, and covered these items with the clothes she wore when entering the store. She was confronted after leaving the store, and merchandise valued at $148 was recovered.

9

| # | Date | Offense/Court | Disposition | Guideline | Pts |
|---|---|---|---|---|---|
| 43. | 07/18/2012 (Age 18) | Minor in Possession of Alcohol/ Magistrate Court, Ada County, ID; Docket No: CR-MD-2012-10951 | 11/26/2012: 60 days jail (58 days suspended), 2 years probation<br><br>12/16/2013: Probation violation, 5 days jail | 4A1.2(c)(2) | 0 |

Court documents verify the above information and that the defendant knowingly waived her right to legal counsel.

| 44. | 07/19/2012 (Age 18) | Possession of Drug Paraphernalia/ District Court, Ada County, ID; Docket No: CR-2012-10960 | 05/23/2013: 5 days jail | 4A1.1(c) | 1 |

Court documents verify the above information and that the defendant was represented by legal counsel.

| 45. | 09/18/2012 (Age 18) | Minor in Possession of Alcohol (Three or More Offenses)/ District Court, Ada County, ID; Docket No: CR-2012-13797 | 11/19/2012: 90 days jail (85 days suspended), 2 years probation<br><br>01/27/2014: Probation violation, 5 days jail | 4A1.2(c)(2) | 0 |

Court documents verify the above information. The police report indicates law enforcement responded to a fight situation. The defendant provided a breath sample that measured 0.156 percent blood alcohol content.

| 46. | 09/28/2012 (Age 18) | Minor in Possession of Alcohol (Three or More Offenses)/ Magistrate Court, Ada County, ID; Docket No: CR-2012-14577 | 11/19/2012: 90 days jail (85 days suspended), 2 years probation<br><br>01/27/2014: Probation violation, 5 days jail | 4A1.2(c)(2) | 0 |

Court documents verify the above information. The police report indicates law enforcement responded to a domestic situation. Upon arrival, the defendant admitted to consuming a double-shot of whiskey.

10

| # | Date | Offense | Disposition | Guideline | Points |
|---|---|---|---|---|---|
| 47. | 10/05/2012 (Age 18) | 1) Disturbing the Peace 2) Minor in Possession of Alcohol (Three or More Offenses)/ District Court, Ada County, ID; Docket No: CR-2012-14821 | 11/19/2012: 1) 180 days jail (178 days suspended), 2 years probation 2) 90 days jail (85 days suspended), 2 years probation 01/22/2014: Probation violation: 4 days jail, 9 months and 28 days probation | 4A1.1(c) | 1 |

Court documents verify the above information and that the defendant knowingly waived her right to counsel. The defendant was initially charged with battery before pleading to the above amended offense. The police report indicates law enforcement responded to a domestic situation. The defendant admitted to officers that she threw a beer bottle at her boyfriend, Matthew McCallum, cutting his head. Officers located her in the bathroom, and she had an odor of an alcoholic beverage emitting from her person.

| # | Date | Offense | Disposition | Guideline | Points |
|---|---|---|---|---|---|
| 48. | 08/31/2013 (Age 19) | Minor in Possession of Alcohol (Three or More Offenses)/ Magistrate Court, Ada County, ID; Docket No: CR-2013-12339 | 10/23/2013: 60 days jail (55 days suspended), 1 year probation 08/28/2014: Probation violation, 9 days jail, case commuted | 4A1.2(c)(2) | 0 |

Court documents verify the above information.

| # | Date | Offense | Disposition | Guideline | Points |
|---|---|---|---|---|---|
| 49. | 12/15/2013 (Age 19) | 1) Driving Without Privileges 2) Driving Under the Influence/ Magistrate Court, Ada County, ID; Docket No: CR-2013-17766 | 01/24/2014: 180 days jail (160 days suspended), 2 years probation, $1,865 fine 08/20/2014: Probation violation, 20 days jail 11/27/2015: Probation violation, 120 days jail, sentence commuted | 4A1.1(b) | 2 |

    Court documents verify the above information and that the defendant was represented by legal counsel. The police report indicates law enforcement initially responded to a crash in which a vehicle was driven into a concrete barrier. The defendant failed field sobriety tests, and she provided breath samples that measured 0.165/0.163 percent blood alcohol content.

| 50. | 08/05/2015 (Age 21) | Possession of Drug Paraphernalia/ Magistrate Court, Ada County, ID; Docket No: CR-2015-11982 | 11/03/2015: 90 days jail (88 days suspended), 1 year probation, $297 fine | 4A1.1(c) | 1 |
|---|---|---|---|---|---|

    Court documents verify the above information and that the defendant was represented by legal counsel. An additional charge of possession of a controlled substance, marijuana, was dismissed.

| 51. | 04/21/2017 (Age 23) | Possession of Drug Paraphernalia/ Magistrate Court, Ada County, ID; Docket No: CR01-17-14189 | 05/30/2017: 2 days jail, $297 fine | 4A1.2(a) | 0 |
|---|---|---|---|---|---|

    Court documents verify the above information and that the defendant was represented by legal counsel. An additional charge of possession of a controlled substance was dismissed. This conviction is relevant conduct to the instant federal offense.

Criminal History Computation

52.   The total criminal history score is five. According to the sentencing table in Chapter 5, Part A, a criminal history score of five establishes a criminal history category of III.

Other Arrests

| | **Date of Arrest** | **Charge** | **Agency** | **Disposition** |
|---|---|---|---|---|
| 53. | 08/04/2012 (Age 18) | Minor in Possession of Alcohol (Three or More Offenses) | Magistrate Court, Canyon County, ID | 07/16/2013: Dismissed |

**PART C. OFFENDER CHARACTERISTICS**

<u>Personal and Family Data</u>

54. The defendant was born on March 22, 1994, in Boise, Idaho, to Matthew Hopper, age 53, and Lisa Porteous, age 49. The defendant's father resides in Salem, Oregon, and her mother resides in Boise. The defendant does not have any siblings.

55. The defendant reported here parents were divorced when she was approximately two years of age. Her father had virtually no impact on her childhood as they did not have any kind of a relationship until the defendant was approximately 20 years of age. The defendant reported she was predominantly raised by her maternal grandparents because her mother was in and out of jail due to her abuse of drugs and alcohol. The defendant stated she had a good childhood when she resided with her grandparents because they provided structure, discipline, and accountability. This was all lost when the defendant resided with her mother. Her grandparents further encouraged and provided for activities and athletics for the defendant, but this all unraveled when the defendant returned to reside with her mother.

56. The defendant reported her mother stopped using drugs and alcohol when the defendant was 12 years of age. The defendant began abusing alcohol and drugs at this point in her life, and she described that she "ran amok" with neighborhood friends. The defendant was the victim of two statutory rapes when she was 15 years of age by men that were 19 and 20 years of age. The defendant reported she was intoxicated, and she indicated she had very little memory of this crime as she was only partially conscious. The defendant stated she then encountered problems in school for several months following the crimes because students blamed the defendant for the incident.

57. The defendant stopped attending school two weeks before her graduation because she just "didn't want to go." She was placed on probation at age 18, and she stated she was relatively stable working two jobs and maintaining her own residence for a period of two years. After being discharged in November 2015, the defendant reported she went "full-throttle" and her life spiraled downhill very quickly. She began abusing methamphetamine on a daily basis for approximately three years.

58. The defendant has never been married, and she has no children. The defendant reported she was engaged to be married to Agustin Aguirre, and they were together for approximately three years. The defendant stated she is currently prohibited from communicating with him because he is currently in a federal prison. Records verify Mr. Aguirre was sentenced to 120 months custody in June 2016 for distribution of methamphetamine and unlawful possession of a firearm. Mr. Aguirre has a significant criminal history, including crimes of violence against women.

59. The defendant's mother was contacted and she verified much of the defendant's personal information. She stated that she obtained sobriety when the defendant was 12, right around the time when the defendant began using drugs and alcohol. Her mother described the defendant as very intelligent, determined, and generous. She stated that unlike in the past, the defendant is currently undergoing drug treatment "for herself," and she is not trying to "game" the system. Her mother stated the defendant never received the necessary counseling to address her being a victim of rape, and she stated this incident was "horrific" and more than just a statutory rape situation. She stated the defendant has made poor decisions in the men she has dates, which has contributed to her problems. Her mother is proud of what the defendant has achieved, she is thankful that the defendant was arrested before anything worse occurred, and she is happy the defendant's "life force" has returned.

Physical Condition

60. The defendant stands approximately five feet, six inches tall and weighs approximately 150 pounds. She has blue eyes and brown hair. The defendant has the following tattoos: four hieroglyphics images on her left forearm; butterfly on right wrist; butterfly on her lower back; a flower on her right ankle; eyes on the heel of each foot; and "Aguirre" on the left side of her neck.

61. The defendant reported her health is generally good, and she has never suffered any prior serious illness or injury. She is not taking any prescription medication, and she reported no allergies to food or medicine.

Mental and Emotional Health

62. The defendant reported no history of mental or emotional problems. She stated that she briefly dealt with being a victim of multiple rapes during drug treatment, but she stated her counselors repeatedly changed and she was not comfortable starting over. The defendant reported she has "stuffed it," referring to the rapes, and it "doesn't matter anymore." She insisted her drug problem and legal problems are unrelated to the rapes. During the interview with the probation officer, the defendant displayed no obvious signs of psychological dysfunction. The defendant was oriented as to time, place, and person.

Substance Abuse

63. The defendant reported she first consumed alcohol at age 14, and by age 16 the defendant was drinking to intoxication on a weekly basis. She stated this weekly intoxication continued until she was 19. The defendant stated that she got "bored" with alcohol, and she only consumed it so she could be around men. The defendant first used marijuana at age 14, and she used marijuana a couple of times per month until she was 22. The defendant first used methamphetamine at age 19, and she smoked methamphetamine on a daily basis for approximately two years before she stopped using methamphetamine for eight months. The

        defendant reported she was smoking methamphetamine the previous three years on a daily basis before she was arrested for the instant offense. She last used methamphetamine in May 2017.

64. The defendant was placed at The Harmony House for inpatient treatment at age 16, and she later completed an intensive outpatient treatment program at Ascent Behavioral Health Services. It took her nearly three years to complete the IOP program because of multiple relapses. The defendant began another intensive outpatient treatment program at Ascent Behavioral Health Services in May 2017. Records indicate the defendant was compliant, regularly attended groups, passed her drug tests, and communicated well. She graduated from IOP treatment on December 6, 2017, and she will continue with individual counseling and treatment weekly for eight weeks.

### Educational and Vocational Skills

65. The highest grade the defendant completed was the eleventh grade at Central Academy in Meridian, Idaho. The defendant stated she was two weeks away from graduating with a high school diploma, with a 3.5 grade point average, when she simply stopped attending school. The defendant obtained her General Education Degree (GED) in 2013 from the College of Western Idaho. The defendant has not obtained any further education or vocational training.

### Employment Record

66. The defendant currently maintains two jobs. She works approximately 20 hours per week at Clinique in a Macy's store located at the Boise Towne Square. She also works approximately 30 hours per week at Aroma Espresso, also located in the Boise Towne Square. She earns $9 per hour at both places of employment, and she hopes to work more hours upon competing her substance abuse treatment. The defendant worked at the Idaho Pizza Company in Boise for more than two years, and she stated this was her longest term of employment.

### Financial Condition: Ability to Pay

67. The defendant denied owning any assets, and she stated her debt is limited to medical bills. A credit report revealed the defendant has no credit history. It does not appear the defendant has the ability to pay a fine within the guideline range at the time of sentence.

## PART D. SENTENCING OPTIONS

### Custody

68. **Statutory Provisions:** The maximum term of imprisonment is 20 years. 21 § 841(a)(1) and (b)(1)(C).

69. **Guideline Provisions:** Based upon a total offense level of 19 and a criminal history category of III, the guideline imprisonment range is 37 to 46 months.

Impact of Plea Agreement

70. The plea agreement had no effect on the guideline calculations, as all relevant conduct was used to arrive at a total offense level pursuant to § 1B1.3. The government agreed, upon a determination that the defendant's cooperation amounts to "substantial assistance," it will request the Court to depart downward from the applicable guideline range, pursuant to § 5K1.1 and 18 § 3553(e).

Supervised Release

71. **Statutory Provisions:** The Court must impose a term of supervised release of at least three years. 21 § 841(b)(1)(C).

72. **Guideline Provisions:** The guideline term of supervised release is three years. Section 5D1.2(c).

73. In addition to the mandatory, standard and special conditions of supervision noted in the Guidelines Manual, the following additional conditions are recommended:

74. The defendant shall submit his or her person, property, house, residence, vehicle, papers, or office, to a search conducted by a United States probation officer. The defendant shall warn any other occupants that the premises may be subject to searches pursuant to this condition.

75. The defendant shall participate in a program of testing and treatment for drug and alcohol abuse, as directed by the probation officer. The cost to be paid by both the defendant and the government based upon the defendant's ability to pay.

76. The defendant shall abstain from the use of alcohol and shall not be present in any location where alcohol is the primary item of sale.

77. The defendant shall participate in a program of mental health treatment, as directed by the probation officer. The cost to be paid by both the defendant and the government based upon the defendant's ability to pay.

78. As directed by a mental health professional, the defendant shall take all medications as prescribed. The cost of medication to be paid by both the government and the defendant based upon the defendant's ability to pay.

Probation

79. **Statutory Provisions:** The defendant is eligible for not less than one nor more than five years probation because the offense is a Class C Felony. 18 § 3561(c)(1). One of the following must be imposed as a condition of probation unless extraordinary circumstances exist: a fine, restitution, or community service.

80. **Guideline Provisions:** Since the applicable guideline range is in Zone D of the Sentencing Table, the defendant is ineligible for probation. Section 5B1.1, comment.(n.2).

Fines

81. **Statutory Provisions:** The maximum fine is $1,000,000. 21 § 841(b)(1)(C).

82. A special assessment of $100 is mandatory. 18 § 3013.

83. **Guideline Provisions:** The fine range for this offense is $10,000 to $1,000,000. If the defendant is convicted under a statute authorizing (A) a maximum fine greater than $250,000, or (B) a fine for each day of violation, the Court may impose a fine up to the maximum authorized by the statute. Section 5E1.2(c)(4).

84. Costs of prosecution shall be imposed on the defendant as required by statute. USSG §5E1.5. In determining whether to impose a fine and the amount of such fine, the Court shall consider, among other factors, the expected costs to the government of any term of probation, or term of imprisonment and term of supervised release imposed. USSG §5E1.2(d)(7) and 18 U.S.C. § 3572(a)(6). These costs may include drug and alcohol treatment, electronic monitoring, and/or contract confinement costs. The most recent advisory from the Administrative Office of the United States Courts, dated July 13, 2017, provides the following monthly cost data:

|  | **Bureau of Prisons Facilities** | **Community Correction Centers** | **Supervision by Probation Officer** |
|---|---|---|---|
| Daily | $95.00 | $80.00 | $12.00 |
| Monthly | $2,989.00 | $2,440.00 | $366.00 |
| Annually | $34,770.00 | $29,280.00 | $4,392.00 |

Restitution

85. **Statutory Provisions:** Restitution is not applicable in this case. 18 § 3663.

86. **Guideline Provisions:** Restitution is not applicable in this case.

Denial of Federal Benefits

87. **Statutory Provisions:** At the discretion of the Court, the defendant, having been convicted of a first drug distribution offense, shall be ineligible for any or all federal benefits for up to five years after such conviction. 21 § 862(a)(1)(A).

88. **Guideline Provisions:** The Court, pursuant to 21 § 862, may deny the eligibility for certain federal benefits of any individual convicted of distribution or possession of a controlled substance. Section 5F1.6.

**PART E. FACTORS THAT MAY WARRANT DEPARTURE**

89. The probation officer has identified the following as potential grounds for departure: 5K1.1 Substantial Assistance to Authorities.

**PART F. FACTORS THAT MAY WARRANT A SENTENCE OUTSIDE OF THE ADVISORY GUIDELINE SYSTEM**

90. Presentation of information in this section does not necessarily constitute a recommendation for a sentence outside of the guideline system.  However, the guidelines have not taken into consideration the personal history and characteristics of this defendant.  The following 18 § 3553(a) factors are present in this case: 1) the defendant's unstable childhood; (2) early abuse of alcohol; (3) raped by two adult males while under the influence of alcohol at age 15 and the lack of counseling to address this issue; (4) addiction to methamphetamine; and (5) successful pretrial release to include obtaining employment and a residence, and successfully completing drug treatment.

Respectfully Submitted,


Nate  Hudson
United States Probation Officer


Approved: Brent Flock / neh

Date: December 21, 2017